NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOEY DAWSON,<br><br>Plaintiff,<br><br>v.<br><br>FEDEX FREIGHT, INC.,<br><br>Defendant. | Civil Action No. 22-01239<br><br>**OPINION**<br><br>March 22, 2024 |

**SEMPER**, District Judge.

The current matter comes before the Court on Defendant Fedex Freight, Inc.'s Motion for Summary Judgment. (ECF 26, "MSJ.") Plaintiff Joey Dawson opposed the motion. (ECF 27, "Opp.") Defendant filed a reply. (ECF 28, "Reply.") The Court has decided this motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 78.1. For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

Plaintiff Joey Dawson is an African American male who worked for Defendant Fedex Freight ("FXF") as a part-time Freight Handler beginning in May 2018. (ECF 1, "Compl." ¶¶ 21-22.) On December 16, 2020, Plaintiff Dawson complained of discrimination to FXF Employee Relations Advisor Victor De Aza. (*Id.* ¶ 44.) De Aza requested specific details regarding the

---

[1] The facts and procedural history are drawn from the Complaint, (ECF 1, "Compl."), Defendant's Motion for Summary Judgment (ECF 26), Plaintiff's Opposition (ECF 27), both parties' submissions regarding undisputed material facts (ECF 26-1; ECF 27-2; ECF 28-2), and documents integral to or relied upon by the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

alleged misconduct and sought to conduct an internal investigation. (ECF 27-2 ¶ 15.) Plaintiff replied saying he could not provide specifics and identified "Chris Lambert" as the subject of his complaint; De Aza deduced that the complaint was about Chris Lampron since there was no "Chris Lambert" at WNJ service center. (*Id.* ¶¶ 16-18.) Plaintiff alleged that Lampron touched his buttocks, shoulder, leg, arm, and hand; Plaintiff also alleged that Lampron made inappropriate racial and sexual comments toward him. (ECF 28-2 ¶¶ 58, 82; ECF 27-2 ¶ 39.)

Plaintiff called De Aza on December 29, 2020 to provide more information regarding his complaint. (ECF 27-2 ¶ 23.) During this call, De Aza and Plaintiff discussed comments Lampron made, and Plaintiff provided names of alleged witnesses. (*Id.* ¶¶ 23, 25.) During his deposition, Plaintiff admitted that he was "belligerent" during this interview with De Aza. (*Id.* ¶ 26.) In his deposition, Plaintiff admitted that he told De Aza that he was "the type of guy that would wait outside of the house" if the situation was "not handled right," after initially denying that he made the statement:

> That statement that was said right there, and I'm being totally honest with you, I said it. Even in my recordings, I said the person that I used to be, I would have dealt with this myself. I would have been at the—I never once threatened nobody. I'm the type of person, my track record shows, and I'm not gonna threaten you. I'm just gonna come after you. I'm not the type of person to threaten anybody. I'm gonna come after you. And I wouldn't have said that to a man who I didn't have a problem with; I would have went after the man who I had a problem with.

(*Id.* ¶¶ 27-28; Def. Ex. A at 154:5-16.) De Aza believed Plaintiff's statements violated FXF's Conduct of Employees Policy and reported it to FXF Security Specialist. (*Id.* ¶ 30.) De Aza proceeded to interview the alleged witnesses for the investigation; De Aza was unable to substantiate any comments or acts of race discrimination or sexual harassment. (*Id.* ¶¶ 31, 41.) De Aza recommended to his manager that Plaintiff's employment be terminated for making threatening remarks during his interview; his manager approved. (*Id.* ¶ 43.) On January 28, 2021,

De Aza notified Plaintiff that he was terminated for making inappropriate comments regarding another FedEx employee in violation of the Conduct of Employee policy. (*Id.* ¶ 44.)

Plaintiff filed a Charge of Discrimination with the EEOC in June 2021 alleging discrimination on the basis of race, color, sex, retaliation, and age. (*Id.* ¶ 48.) The EEOC issued Plaintiff a Dismissal and Notice of Rights on December 6, 2021. (*Id.* ¶ 49.) Plaintiff filed the instant lawsuit on March 7, 2022. (ECF 1, Compl.) In the Complaint, Plaintiff brought several counts against FXF including race discrimination in violation of Title VII of the Civil Rights Act of 1964 and the New Jersey Law Against Discrimination ("NJLAD"), sexual harassment hostile work environment claims in violation of Title VII of the Civil Rights Act of 1964 and the NJLAD, and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act. (ECF 1, Compl. ¶¶ 49-90.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted if the movant shows that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be

discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

### III.   ANALYSIS

#### A. Race Discrimination Claims: Count I (Title VII) and Count II (NJLAD)

Counts I and II allege race discrimination in violation of Title VII of the Civil Rights Act of 1964 and the NJLAD, respectively. (ECF 1, Compl. ¶¶ 49-57, 58-60.) Under both statutes, when there is only circumstantial evidence of race discrimination, the discrimination claims are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell Douglas* framework first requires that a plaintiff bringing a Title VII claim establish a prima facie case of discrimination. *Id.* at 802. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, non[-]discriminatory reason" for the adverse employment action. *Id*. If the defendant does advance a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to prove that the reason is pretextual, and the real reason for the adverse action is discrimination. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999); *Boykins v. SEPTA*, 722 F. App'x 148, 152 (3d Cir. 2018). To show pretext, "a plaintiff must submit evidence which: (i) casts doubt on the legitimate reason proffered by the employer such that a factfinder could reasonably conclude that the reason was a fabrication; or (ii) allow[s] the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the employee's termination." *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 242 (3d Cir. 2007). Under Title VII, employers are prohibited from discriminating based on an employee's race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2(a), and from retaliating against an employee for complaining about, or reporting, discrimination or retaliation. *Id.* § 2000e–3(a). *See Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 253 (3d Cir. 2017). To make out a prima facie case of employment discrimination based on race or national origin, Plaintiff must show: (1) he is a member of a protected class; (2)

he was qualified for his position; (3) he was subject to an adverse employment action; and (4) he was discharged under circumstances that raise an inference of discrimination. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). In addition, "[t]he prima facie elements of employment discrimination are the same for claims under Title VII and the NJLAD." *Murphy v. Hous. Auth. & Urb. Redevelopment Agency*, 32 F. Supp. 2d 753, 763 (D.N.J. 1999).

Plaintiff satisfies the first three elements: (1) he identifies as African American; (2) there is no dispute that Plaintiff was qualified for his position; (3) he was terminated from his position. Regarding the fourth element, Plaintiff has not presented the Court with evidence demonstrating that he was discharged under circumstances raising an inference of discrimination. Plaintiff argues that (1) "there is no evidence that Lampron, a Caucasian male, who made at least one racially discriminatory statement to Plaintiff, actually received any corrective action;" (2) that De Aza terminated Plaintiff in the same email where he told Plaintiff his complaints were unfounded; and (3) De Aza had previously investigated claims of racial discrimination made against Lampron the year prior and claimed that the complaining individual was trying to pull the race card. (ECF 27, Opp. at 10.) These arguments are unavailing and do not raise an inference that Plaintiff was discharged under circumstances raising an inference of discrimination. Most importantly for a summary judgment assessment, Plaintiff fails to proffer any evidence demonstrating a genuine issue of material fact as to the fourth element. *See Katz*, 972 F.2d at 55. Further, even if Plaintiff made out a prima facie case in the first instance, FXF puts forth significant evidence demonstrating its legitimate, non-discriminatory reason for Plaintiff's termination. Plaintiff's statements to De Aza during his interview were repeatedly cited as the basis of his termination. (ECF 26, MSJ at 12.) In response, Plaintiff fails to submit any evidence that casts doubt on the reason proffered by FXF such that a factfinder could reasonably conclude the reason was a fabrication or infer that

discrimination was more likely than not a motivating or determinative cause of the employee's termination. *See Johnson*, 214 F. App'x at 242. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to Counts I and II.

### B. Hostile Work Environment Sexual Harassment Claims: Count III (Title VII) and Count IV (NJLAD)

Counts III and IV allege hostile work environment sexual harassment claims in violation of Title VII of the Civil Rights Act of 1964 and the NJLAD, respectively. (ECF 1, Compl. ¶¶ 61-72, 73-82.) An individual has 300 days from the date of the discriminatory act to file a charge with the Equal Employment Opportunity Commission ("EEOC"). *See* 42 U.S.C. § 2000e–5(e). Absent a continuing violation, all discriminatory acts that are alleged to have occurred more than 300 days prior to the EEOC filing are time-barred. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Plaintiff filed his EEOC charge on June 30, 2021; therefore, absent a continuing violation, all alleged incidents which occurred before September 3, 2020, are barred by the 300-day limitations period. Plaintiff does not allege a continuing violation, does not contest FXF's statute of limitations argument, and does not present any specific dates or timeframes of alleged sexual harassment other than an allegation that Lampron allegedly touched him inappropriately in mid-2019, outside of the statute of limitations period. (ECF 1, Compl. ¶ 38.)  Further, Plaintiff's EEOC Charge of Discrimination lists the earliest date when discrimination took place as September 1, 2020. (ECF 26, MSJ, Ex. I.) Plaintiff provided no evidence specifying the date of any comment or action within the statutory period; accordingly, the Court **GRANTS** FXF's motion for summary judgment on Count III.

NJLAD claims are subject to a two-year statute of limitations. *Brown v. Camden City Sch. Dist.*, No. 19-00114, 2020 WL 6055070, at *5 (D.N.J. Oct. 13, 2020); *Alexander v. Seton Hall*

7

*Univ.*, 8 A.3d 198, 203 (N.J. 2010) (citing *Montells v. Haynes*, 627 A.2d 654, 659 (N.J. 1993)). Accordingly, the Plaintiff's EEOC Charge of Discrimination timeline survives the statute of limitations issue regarding the NJLAD claim.

The analysis for hostile work environment claims under NJLAD is the same as Title VII hostile work environment analysis. *Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 941 (3d Cir. 2009) ("New Jersey Courts treat hostile work environment claims under the NJLAD the same as the Supreme Court treats hostile work environment actions under Title VII."). Plaintiffs asserting a hostile work environment claim have the prima facie burden of demonstrating that "(1) the employee suffered intentional discrimination because of his/her sex, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of respondeat superior liability." *Selvato v. SEPTA*, 658 F. App'x 52, 55 (3d Cir. 2016) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013)). The hostility of the work environment is determined by the totality of the circumstances, which "may include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Fichter v. AMG Res. Corp.*, 528 F. App'x 225, 230 (3d Cir. 2013) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)). At summary judgment, district courts must determine whether a reasonable jury could conclude that the alleged harassment was severe and pervasive. *See Selvato*, 658 F. App'x at 55. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation and quotations omitted). Therefore, "[t]he mere utterance of an epithet, joke, or

inappropriate taunt that may cause offense does not sufficiently affect the conditions of employment to implicate. . . liability." *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001). In addition, the standard for establishing respondeat superior liability differs based on whether the individual performing the sexually harassing behavior is the plaintiff's supervisor or a non-supervisory co-worker. *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. *Faragher*, 524 U.S. at 807.

FXF seeks to assert the *Faragher-Ellerth* affirmative defense. (ECF 26, MSJ at 16-21.) The *Faragher-Ellerth* affirmative defense will apply in an action in which an employee seeks to hold an employer vicariously liable under Title VII for actionable hostile environment created by a supervisor if an employer shows that: (1) it exercised reasonable care to avoid harassment and to eliminate it when it might occur; and (2) the plaintiff failed to act with reasonable care to take advantage of the employer's safeguards and otherwise prevent harm that could have been avoided. *Minarsky v. Susquehanna Cnty.*, 895 F.3d 303, 310 (3d Cir. 2018). However, the affirmative defense applies only when the plaintiff employee has not suffered a tangible employment action. *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 328 (3d Cir. 2015) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 143 (2004)). "The Supreme Court has defined a 'tangible employment action' as 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Jones*, 796 F.3d at 328 (quoting *Ellerth*, 524 U.S. at 761). Plaintiff was terminated by FXF in January 2021. (ECF 27-2 ¶ 44.) Accordingly, the defense is unavailable to FXF and the Court assesses the elements of Plaintiff's NJLAD claim.

The Court finds Plaintiff's NJLAD claim related to the alleged hostile work environment withstands the motion for summary judgment. Genuine issues of material fact exist as to whether Plaintiff suffered intentional discrimination because of his sex, whether the discrimination was severe or pervasive, whether the discrimination detrimentally affected Plaintiff, and whether that discrimination would detrimentally affect a reasonable person in like circumstances. Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment with respect to Count IV.

### C. Retaliation Claims: Count V (Title VII) and Count VI (Pennsylvania Human Relations Act)

Count V alleges a retaliation claim in violation of Title VII of the Civil Rights Act of 1964; Count VI alleges a retaliation claim in violation of the Pennsylvania Human Relations Act ("PHRA"). (ECF 1, Compl. ¶¶ 83-90.) The Court addresses each claim in turn.

"To survive summary judgment, the employee must first set forth a prima facie case of retaliation." *Finizie v. Sec'y, U.S. VA*, 751 F. App'x 300, 303 (3d Cir. 2018). This requires a plaintiff to show: "(1) that she engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)). Once a prima facie case of retaliation is established, "[t]he employer then bears the burden of offering a non-retaliatory reason for its action." *Finizie*, 751 F. App'x at 303 (citing *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017)). "Once the employer offers such a reason, the employee bears the burden of showing that the proffered explanation is a pretext and that the real reason was retaliation." *Id.* (citing *Carvalho-Grevious*, 851 F.3d at 257). "[T]o survive summary judgment," the employee "must raise a genuine issue of

material fact as to whether the employer's proffered explanation was a pretext for retaliation." *Khazzaka v. Univ. of Scranton*, 148 F. App'x 72, 74 (3d Cir. 2005) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997)); *see also Wright v. Shore Mem. Hosp.*, Civ. A. No. 11-5583, 2013 WL 6080072 at *19 (D.N.J. Nov. 19, 2013) ("Defendants are entitled to summary judgment on this [retaliation] claim. Even assuming [p]laintiff establishes a prima facie case of retaliation for taking protected leave, [p]laintiff cannot establish pretext necessary to survive summary judgment."). Accordingly, the Court must determine whether Title VII Plaintiffs have established a prima facie case of retaliation and, if so, whether there is a genuine issue of fact on the pretextuality of Defendants' proffered explanations.

Here, it is undisputed that Plaintiff engaged in protected activity in reporting Lampron and that Plaintiff suffered an adverse action from his employer after engaging in protected activity. Regarding the third element, Plaintiff does not present the Court with evidence of a causal connection between the employee's protected activity and the employer's adverse action. "The Supreme Court has clarified that the third element of a Title VII retaliation claim requires but-for causation." *D'Ambrosio v. Crest Haven Nursing & Rehab. Ctr.*, 755 F. App'x 147, 153 (3d Cir. 2018) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation . . .")). Therefore, for Plaintiff to satisfy the but-for causation requirement, he would have needed to present evidence showing that but-for reporting Lampron, he would have remained employed by FXF. As discussed, there is ample evidence in the record reflecting a standalone reason for terminating Plaintiff's employment. (*See* ECF 27-2 ¶¶ 27-28; Def. Ex. A at 154:5-16.)

Even if Plaintiff made out a prima facie case of retaliation, FXF offered a non-retaliatory reason for its action: Plaintiff's statements to De Aza during the phone interview. (*See id.*)

11

Accordingly, the burden shifts back to Plaintiff to provide evidence to the Court that FXF's explanation was a pretext for retaliation. However, Plaintiff failed to do so; Plaintiff did not raise a genuine issue of material fact as to whether FXF's proffered explanation was a pretext for retaliation. As such, the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to Count V.

Finally, as to Count VI, the Court refuses to read a new claim into Plaintiff's Complaint at this stage. Plaintiff's Complaint repeatedly references issues related to the Pennsylvania Human Relations Act specifically. (ECF 1, Compl ¶¶ 14, 87-90.) As such, the Court refuses to interpret Count VI as an NJLAD claim based upon a "scrivener's error." (ECF 27, Opp. at 1 n.1.) Plaintiff cannot state a valid claim of retaliation under Pennsylvania law because Plaintiff does not live in Pennsylvania and the claim concerns allegations taking place entirely in New Jersey. Accordingly, Plaintiff's retaliation claim pursuant to the PHRA is **DISMISSED.**

### IV.     CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:   Clerk
cc:     José R. Almonte, U.S.M.J.
        Parties